UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
BRIAN LEES a/k/a               )
BRIAN LEE,                     )
                               )
            Petitioner,        )
                               )
      v.                       )          CIVIL ACTION
                               )          No. 22-11379-WGY
NELSON ALVES,                  )
                               )
            Respondent.        )
_____)
```

YOUNG, D.J.                               September 27, 2023

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

For the reasons stated below, petitioner Brian Lees a/k/a Brian Lee ("Lees")[1] 28 U.S.C. § 2254 petition for a writ of habeas corpus is <u>DENIED</u> and this action is <u>DISMISSED</u> with prejudice. All pending motions are <u>DENIED</u>.  Pursuant to 28 U.S.C. § 2253(c)(2) and Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District courts, a certificate of appealability is <u>DENIED</u> because Lees has not made a substantial showing of the denial of a constitutional right. The Clerk is directed to enter a separate order of dismissal.

---

[1] The Court uses petitioner's name as he signs his name. the Court notes that his name appears Brian Lee as to the relevant state filings.

While under certain circumstances inaccuracies in a
transcript that adversely affect the outcome of a criminal
action may violate a criminal defendant's constitutional rights,
there is no constitutional right to cling to an inaccurate
transcript in a jury voir dire.  Lees, through his pro se
petition, attempts to capitalize on what the Massachusetts
Supreme Judicial Court determined was a mere typographical error
in a transcript.  The error was caught only when the SJC was
able to obtain, sua sponte, but with notice to the parties,
audio recordings of the jury voir dire proceedings from the
trial court post-oral argument of Lees' plenary direct appeal of
his first-degree murder conviction for patricide.

Lees was represented by counsel in his direct appeal.
Post-decision, but before firing his lawyer, Lees moved pro se
for rehearing on the issue of the newly discovered audiotapes,
which was denied.  Lees' counsel, after listening to the
audiotapes apparently agreed with the SJC's correction, and in
the context of a motion for withdrawal indicated to the SJC that
there was no reasonable basis for further proceedings.

Lees fired his lawyer and, proceeding pro se, after
unsuccessfully attempting to move for a new trial and denial of
a gateway motion to appeal the denial of that motion, now
petitions this Court for a writ of habeas corpus claiming that
his constitutional rights were violated based upon the original,

incorrect transcript, and the corrected transcript.
Alternatively, he claims that his Fourteenth Amendment
procedural due process rights were violated by the Supreme
Judicial Court's procedure of <u>sua</u> <u>sponte</u> correction of the
record.

After careful review of the parties' filings, relief must
be denied because Lees has not met his high burden of proving
that the state court's decisions as to all grounds were
"contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme
Court of the United States," or were "based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding."  28 U.S.C. § 2254(d).

## II.  FACTS

### A.   Lees' Trial and Conviction for Murder in the First Degree with Extreme Atrocity or Cruelty of his Father

#### 1. Lees' Indictment for Murder in the First Degree

On January 23, 200, Lees was indicted for Murder in the
First Degree pursuant to Mass. Gen. Laws ch. 265, §1, for
beating his father to death.  Indictment, ECF No. 23-2 93.  The
facts of Lees' underlying state criminal action are taken from
the Supreme Judicial Court's 2018 opinion:

> The victim was the defendant's father.  Ruth
> Collins and her daughter, Caron Collins, had known the
> defendant for several years at the time of the
> homicide . . . The defendant was friendly with Caron

[3]

and had done housework for Ruth.  On October 28, 2006,
Ruth saw the defendant walk behind her house carrying
white garbage bags.  Soon after, the defendant left
without any garbage bags.  Ruth and Caron checked the
backyard for the garbage bags.  They found white
garbage bags in a compost bin, and inside one of the
garbage bags, they found a human head.  When police
arrived, officers found two arms and two legs in the
other garbage bags.

Ruth reported that she had seen the defendant
carrying white garbage bags behind her house.  Police
officers learned that the defendant's father had
sought an abuse prevention order against him three
days earlier . . . Officers went to the defendant's
father's house to check on his safety.  In the house,
officers found white garbage bags and a human torso in
a plastic tub.  A fingerprint on the tub was later
identified as the defendant's.

That same day, the defendant spoke with the
police.  He told detectives that he had dismembered
his father but not killed him.  The defendant also
told police that he had thrown away his father's
mattress, sheets, and blanket because they were
covered in blood.  The medical examiner testified that
multiple blows to the head caused the victim's death.
The defendant's medical expert testified that the
victim's death was a homicide.

At trial, the defendant represented himself . . .
and conferred with standby counsel.  His theory of his
defense was that the Commonwealth did not meet its
burden of proof, the police and medical examiner
altered evidence, and the victim was not the
defendant's father.

Commonwealth v. Lee, 479 Mass. 558-559 (2018).[2]

---

[2] The SJC referred to Lees by the surname "Lee" which was
the surname that appeared on the indictment.  Id. n. 1.

### 2. Lees Represented Himself at Trial with Standby Counsel

Lees had multiple appointed criminal counsel.  The trial court found Lees' attempt to fire his third lawyer as a delay tactic:

> THE COURT: The reason you're not on trial is because you keep on trying to fire your lawyers.
>
> THE DEFENDANT: Well, they're preventing me from asserting my rights.
>
> THE COURT: Well, we're not going to argue, Mr. Lee. Your motion for a speedy trial carries no weight with me given your dilatory tactics. Go on.
>
> . . . .
>
> THE COURT: The defendant's motion to discharge Ms. Regan is denied. Ms. Regan's motion to withdraw is also denied. I find the defendant has not proffered good cause for discharge. I find has engaged in dilatory tactics, as well. What I will tell you, Mr. Lee, is the following. This case raises the issue of the potential waiver of counsel by conduct. You need to be explicitly warned of the following, and I will give you this express warning, Mr. Lee.  If you engage in any abusive conduct towards your attorney, you will lose your constitutional right to an appointed attorney, and you will be forced to represent yourself. As I told you last time in Court or a prior time, when I appointed Ms. Regan, she's your last lawyer. Your motion to discharge her has not been made in good faith, so therefore discharge is not granted. .

Oct. 5, 2009 Hearing Tr. 20-23, ECF No. 15-20 (emphasis added).

On November 12, 2009, after hearing and careful consideration by the trial court -- and upon Lees' insistence --

Lees was ultimately permitted to represent himself, with his third attorney as stand-by counsel.[3]

### 3. Jury Voir Dire and Colloquy with Juror No. 226

On November 17, 2009, trial commenced with jury selection. The Court held a comprehensive voir dire of the putative jurors, including a questionnaire.  Nov. 17, 2009 Tr. 87-96, ECF No. 15-8 88-96.

The Court explained the jury selection process and that after individual questioning of the juror, the exercise of preemptory challenges "on the spot." Tr. ECF No. 15-8 74.[4]

---

[3]  The Supreme Judicial Court determined that the trial court "conducted a proper colloquy with [Lees] about waiving his right to counsel", Lee, 479 Mass. at 559 n. 4, which is confirmed by the record.

[4]  The trial court was clear in its instruction regarding the jury selection process:

> THE COURT: And, but you will have to exercise  your peremptory challenges on the spot. If you don't want a juror after we've done the interview you have to declare  yourself.  The juror will step back here so that they won't know what we're talking about and I'll ask both prosecution and defense, do you want this juror? And you have to tell me on the spot I don't want that juror or I agree to keep that juror. . . . .
>
> And as each juror is interviewed and you hear what they have to say then they'll step back and I'll ask the prosecutor, do wish to have this juror? She'll either say, I'm content or I strike the juror. And that will be charged against her 16. And then if she says content, I'll ask you, do you want to have this juror or strike this juror?  And every juror you strike counts against your 16.  Tr. 15-8, 74-75.

The trial court undertook voir dire questions in open court, followed by individual voir dire.  With respect to Juror No. 226 the following was originally -- but the highlighted portion erroneously -- transcribed:

THE JUROR:     Hi.

THE COURT:     You didn't raise your hand at all, so please be seated, I have some private questions for you.

THE JUROR:     Sure.

THE COURT:     Have you fully and fairly filled out this part of the questionnaire about your experiences with the law? It asks about whether you've been a juror before, civil cases, arrests, convictions that sort of thing.

THE JUROR:     Yes.

THE COURT:     Okay. Have you close family member or close and dear friend been a victim of domestic violence or been accused of domestic violence?

THE JUROR:     No, sir.

THE COURT:     All right. In this trial you will see some graphic photos of body parts, and the question is whether you think that would affect your ability to be a fair and impartial juror?

THE JUROR:     Yes.

THE COURT:     All right, do you have any other concerns about being a fair and impartial juror for a first degree murder prosecution?

THE JUROR:     No, sir.

THE COURT:     Okay. Can you help us as a juror, can you sit for the days this trial goes on and give us a verdict?

```
THE JUROR:      I believe so.

THE COURT:      Thank you. Please step back I'll give
you an answer in just a moment.

MS. BROADBENT: The Commonwealth is content.

MR. LEES:       I am content with this juror.

THE COURT:      You are content?

MR. LEES[]:     Yes.

THE COURT:      All right, he will become Seat Number
2.  You're fully qualified for Seat 2 and you'll be
upstairs with the other juror who has been picked so
far.

THE JUROR: Okay.

THE COURT: You'll be on this trial.
```

Nov. 17, 2009 Trial Tr. 106-107, ECF No. 15-8 106-107

(emphasis added).

After a few more jurors, Lees stepped away to confer with

his standby counsel, and when he returned sought to belatedly

challenge Juror No. 226, who was at that point seated as Juror

No. 2:

```
MR. LEES[]:     Your Honor, I didn't understand [Seat
Number] 2 juror then and I would like to challenge
Juror [Seat] Number 2 if that's possible if you'd let
me do this one time.

THE COURT:      No. I decline to do that.

[MR. LEES:]     It was a misunderstanding.[5]
```

---

[5] Lees asserts -- and it is not disputed -- that he, not the
trial court, said "It was a misunderstanding."  This appears to
be correct.  Either way, it makes no difference here.

> THE COURT:     I understand. Your rights are saved on
> it but you indicated you were content and the record
> so reflects.  I'm not going to go backwards.

Id.  Jury selection continued, and a jury was empaneled.

### 4. Lees is Convicted by Jury of Murder in the First Degree with Extreme Atrocity and Cruelty

On December 9, 2009, after representing himself at trial, Lees was convicted by a jury as to "Guilty of Murder in the First Degree Based the theory of: Extreme Atrocity or Cruelty." Verdict, ECF No. 23-2 94.  Lees was sentenced to life in prison without the possibility of parole.  December 9, 2009 Trial Tr. ECF No. 15-19 12; Mittimus, ECF No. 31-1 1.

### B.   Lees' Section 33E Plenary Direct Appeal

Lees appealed.  Notice of Appeal, ECF No. 23-2 95.  Unlike other criminal matters, under Massachusetts law, First Degree murder convictions are provided a higher level of scrutiny, and are automatically elevated to plenary review by the Supreme Judicial Court.  See Mass. Gen. Laws ch. 278, § 33E ("Section 33E").[6]  That extra degree of protection comes with a cost: it limits a defendant's ability to appeal further post-conviction motions.  Id.

---

[6] Section 33E provides in pertinent part that "[i]n a capital case as hereinafter defined the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence." Mass. Gen. Laws Ann. ch. 278, § 33E.

### 1. Lees Appeals Based Upon Juror No. 226 Response In Original Transcript

Consistent with Lees' dilatory practice at trial, he went through several appointed counsel during his direct appeal. Eight years later, on April 17, 2017, through his fifth appointed direct-appellate counsel, Lees filed his appellate memorandum.  His appeal centered on one argument: that the trial court's failure to excuse Juror No. 226 deprived Lees of a fair trial, in addition to the general claim that the Court ought vacate the conviction under Section 33E.

Lees claimed that Juror No. 226 was biased because of the following colloquy during jury voir dire as erroneously set forth in the original transcript.  As recounted by the SJC the transcript read:

> THE JUDGE: "All right. In this trial you will see some graphic photos of body parts, and the question is whether you think that would affect your ability to be a fair and impartial juror?"
>
> THE JUROR: "Yes."
>
> THE JUDGE: "All right, do you have any other concerns about being a fair and impartial juror for a first degree murder prosecution?"
>
> THE JUROR: "No, sir."

Lees, 497 Mass. at 560 (emphasis in original).  On its face, this appeared to reveal that Juror No. 226 might not be able to be impartial.  The SJC found that neither Lees nor the

Commonwealth opposed seating the juror at that point, but a few minutes later a request to strike was denied.  Id.

Lees' appeal to the SJC was "premised on the trial transcript."  Id.  Neither party, however, had reviewed the audiotapes of the hearing, and apparently Lees' appellate counsel had been misinformed that no audio existed.  Id.

### 2. The SJC Inquires About Audiotapes of Juror No. 226 Voir Dire at Oral Argument, Sua Sponte Obtains the Audiotapes, and Notifies the Parties

The oral argument on direct appeal was held on January 9, 2018 based upon the original transcript.[7]  On January 25, 2018, Lees' counsel filed a letter with the SJC, recounting the SJC's inquiry into the parties' ability to obtain the audio recording of the proceeding, and the Suffolk County Clerk's office and the court reporter informing her that the recording did not exists.  See Letter, ECF No. 32-1.  Nevertheless, after hearing the parties' oral argument, the SJC sua sponte "acquired the transcriptionist's audio recordings and learned that the transcript was inaccurate."  Id.  The SJC's notice on the docket reads:

> Notice: This court has obtained the audio recording
> dated November 17, 2009 from the Superior Court.

---

[7] A video recording of the hearing can be found at the SJC's YouTube page at https://www.youtube.com/watch?v=N20Verw5aqk.

SJC Docket, Doc. #54 (emphasis added).  Two months later, on May 7, 2018, Lees' appellate counsel moved for a copy of the audio tapes.  SJC Docket, Doc. #55.  That motion was referred to a single justice.

The pending motion did not give the SJC pause, and the SJC issued its decision on May 15, 2018.

### 3. The SJC Sua Sponte Corrects the Transcript In Its Decision Affirming the Conviction Two Months Later

The SJC sua sponte corrected the record in its decision as follows:

> THE JUDGE:  "You will see in this trial some graphic photos of body parts.  The question is whether you think you could see them and remain a fair and impartial juror."
>
> THE JUROR:  "Yes."
>
> THE JUDGE:  "Do you have any other concerns about being a fair and impartial juror in a first degree murder prosecution?"
>
> THE JUROR:  "No, sir."

Id. at 560 (emphasis in original).[8]

---

[8] Lees claimed in his Reply that the audio had not been provided "in its entirety."  Reply 6.  The Court determined that the corrected portion of the record was necessary to complete the record.  This Court requested a copy of the audio clip from the Respondent, which was provided to the Court, though the denial of peremptory challenge was not included (and not necessary).  See Order, ECF Nos. 39 and 41.  Pursuant to 2254 Rule 7(c), an upon Lees' motion, the Court provided Lees "an opportunity to admit or deny the correctness" of that audio clip by ordering the respondent an opportunity to review a copy of the exhibit provided to the Court.  See Order, ECF No. 45.  Lees disputes the "correctness of document 41-1 (audio file) and its

With this correction, the SJC affirmed the conviction
holding there was no structural error of seating the juror
and there was no basis to reduce the degree of guilt or
order a new trial:

> The judge conducted a sufficient colloquy with juror
> no. 226 to determine that he would not be a biased
> juror.  We therefore discern no error.  We have
> thoroughly reviewed the entire record in accordance
> with our duty under G. L. c. 278, § 33E, and decline
> to reduce the degree of guilt or order a new trial.
> The defense that the Commonwealth did not meet its
> burden is without merit; the physical and eyewitness
> evidence against the defendant was overwhelming.
> During closing argument and cross-examination, the
> defendant advanced theories about the police and
> medical examiner fabricating evidence and
> misidentifying the victim as his father.  Neither of
> these theories had any evidentiary support.
> Given the transcription error, we conclude that the
> defendant should not be subject to the gatekeeper
> provision of G. L. c. 278, § 33E, for any issue that
> was not apparent from the transcript and could only be
> discovered from the audio recording of the
> proceedings.

Lees, 479 Mass. at 560-561.

The Supreme Judicial Court noted "[a]fter oral argument,
the defendant also sought the transcriptionist's audio
recordings and was erroneously informed that no recordings of

---

content for the use of anything other than to establish the
facts of his claim set forth in Ground Two."  Resp. Court Order
Reply to Doc. No. 41-1.  The Court has reviewed the portion of
the audio clip that the SJC corrected.  The Court confirms that
the SJC's correction of the record is accurate.  Other than his
objection, Lees provides no evidence that the SJC's correction
is inaccurate or inauthentic, and the Court rejects the
objection.  The audio transcript is admitted over objection as
part of the record without limitation.

the trial existed.  Upon release of this opinion, we will ensure
that the defendant will have access to all recordings of the
trial." Id. at 560 n 1.

On May 21, 2018, Lees' counsel filed a motion to stay
issuance of the rescript:

> Central to the decision was the recording of the
> voir dire in the trial.  Mr. Leess has sought a copy
> of this recording, but was misinformed that none
> existed.  After learning that the Court had obtaineda
> copy of the recording, Mr. Leess filed a motion to
> obtain a copy of it.  That motion was referred to the
> single justice.  . . . Mr. Leess has not yet received
> access to these recordings. . . . Accordingly, Mr.
> Leess requests tha the rescript be stayed sixty days
> so that thi counsel has the opportunity to access the
> recordings and share them with him, and make any
> further argument to this Court based thereon.

Lees' Mot. Stay Issuance Rescript 246-248, ECF No. 33.

On May 31, 2018, the SJC allowed the motion to obtain a
copy of the audio recording.  See DJC Docket Com. v. Leess, SJ-
2018-M023, Doc. No. 2.

On June 4, 2018, although represented by counsel, Lees
filed a pro se motion for reconsideration en banc.  In that
motion, Lees asserted, among other things, that a new hearing
would be necessary so that the panel could consider "the
transcript record is correctly transcribed for the trial of the
case." Id. at 2, ECF No. 33 250.

On June 29, 2018, the SJC denied the motion, which was copied to Lees and his counsel.  Notice Denial Pet. Rehearing, ECF No. 33 252; SJC Docket, Doc. 61, ECF No. 33 100.

On September 12, 2018, Lees' appellate counsel having listened to the recordings, moved to withdraw at the request of Lees, noting that there was nothing further to argue:

> Central to the [SJC's] decision was the audio
> recording of the voir dire in the trial.  Mr. Lees had
> sought a copy of this recording, but had been
> misinformed by the clerk's office that none existed. .
> . . . Undersigned counsel since has reviewed that
> recording, and perceives no reasonable grounds for
> further proceedings in this Court. . . . . Mr. Lees
> has asked that undersigned counsel withdraw from the
> case. Upon counsel's information and belief, Mr. Lees
> plans to proceed pro se.

Counsel's Mot. Withdraw, ECF No 33, 7-8 (emphasis added).  On September 21, 2018, Lees was ordered to respond.  SJC Docket, Doc. No. 65.

On September 28, 2018, Lees responded to his counsel's motion to withdraw, asking for new counsel claiming, among other things, that he had not received copies of the recordings, that his counsel had refused to provide copies to him.  Lees' Reply Mot. Resp. Counsel's Mot. Withdraw, ECF No. 33 10-11.  The Supreme Judicial Court did not act on Lees' motion to withdraw, and no action was necessary after the rescript issued.

### C.  Post-Direct Appeal Proceedings

#### 1. Lees Filed Pro Se Motion for New Trial Which the Trial Court Denied

On October 15, 2018, Lees filed a pro se motion for new trial and motion for audio transcripts in the Superior Court. On December 21, 2018, the trial court noted that Lees had not heard the audiotapes, and ordered that once Lees had an opportunity to review the audiotapes, he could file a supplemental motion.  On May 11, 2020, Lees filed a supplemental motion, Def.'s Suppl. Mot New Trial ECF No. 33, which was opposed.

The Supplemental Motion for New Trial advanced arguments similar to those advanced here.  Lees apparently abandoned his argument based upon the original transcript, and quoted the new transcript.  Suppl. Mot. 6.  Indeed, he claimed that notwithstanding the transcript, the trial court insufficiently examined the juror on this corrected record.  Id.

Lees claimed that the SJC did not "adequately safeguard" his right to appellate counsel.  Id. at 6.  Lees then claimed he was prejudiced because a supplemental brief was never ordered with respect to the plenary review concerning the SJC's determination that the evidence against him was overwhelming. Id.  Lees then claimed that his direct appellate counsel argued

a "frivolous appeal" providing incompetent assistance.  Id.  at
9-10.

A hearing on the motion for new trial was held on May 21,
2021.  Docket, ECF No. 33 184.  Later that day, the Court denied
the motion.  The trial court listened to the recording and
confirmed that the "SJC's quotation was accurate."  The trial
court rejected Lees' argument that the SJC was wrong, that it
should not have relied on a non-certified copy, and that he was
denied counsel.  See Order, ECF No. 33, 102-104.

Lees sought leave to appeal the denial of his motion for a
new trial pursuant to a Single Justice of the Supreme Judicial
Court pursuant to Mass. Gen. Laws ch. 278, § 33E, a so-called
"gatekeeper motion."  Pro Se Gatekeeper Petition in a Capital
Case, ECF no. 33 13-22.  That statute provides in part, "[i]f
any motion is filed in the superior court after rescript, no
appeal shall lie from the decision of that court upon such
motion unless the appeal is allowed by a single justice of the
supreme judicial court on the ground that it presents a new and
substantial question which ought to be determined by the full
court."  Id.

A Single Justice of the SJC denied the gatekeeper motion:

Memorandum of Decision & Order: "Pursuant to the
gatekeeper provision of G. L. c. 278, § 33E, the
defendant Brian Lees seeks leave to appeal an order of
the Suffolk Superior Court (Krupp, J.) denying his
supplemental motion for a new trial. For the reasons

set forth below, the defendant's application is
denied. The defendant was indicted for murder in the
first degree for the killing and dismemberment of his
father. During trial, at which the defendant
represented himself, the judge informed prospective
jurors that the trial would involve viewing "graphic
photos of body parts" and asked if that would affect
their ability to remain fair and impartial.  According
to the original trial transcript, the following
exchange took place between the judge and a
prospective juror who was eventually empaneled: THE
JUDGE: "All right. In this trial you will see some
graphic photos of body parts, and the question is
whether you think that would affect your ability to be
a fair and impartial juror?" THE JUROR: "Yes."  THE
JUDGE: "All right, do you have any other concerns
about being a fair and impartial juror for a first
degree murder prosecution?"  THE JUROR: "No, sir." At
the time, neither the defendant nor the Commonwealth
objected to seating this juror. Later on, during jury
selection, the defendant attempted to challenge this
juror, but the trial judge ruled he could not
challenge a juror that had already been seated.
Defendant was convicted of murder in the first degree.
On direct appeal, during which the defendant was
represented by counsel, the sole issue raised was
whether seating this juror violated the defendant's
constitutional rights. Commonwealth v. Lee, 479 Mass.
558, 559 (2018).  During oral argument, the Court
asked the parties if an audio recording of the jury
selection was available.  Defendant's counsel inquired
with the Suffolk County Clerk's office and was
incorrectly informed that no recording existed. After
oral argument, this Court made its own enquiry into
the audio recording and was able to locate a copy. Id.
at 560. We discovered that the actual exchange between
the judge and juror was: THE JUDGE: "You will see in
this trial some graphic photos of body parts.  The
question is whether you think you could see them and
remain a fair and impartial juror." THE JUROR: "Yes."
THE JUDGE: "Do you have any other concerns about being
a fair and impartial juror in a first degree murder
prosecution?"  THE JUROR: "No, sir."  Id. Accordingly,
the Court affirmed the conviction. Id. at 561.  The
Court noted it would "ensure that the defendant will
have access to all recordings of the trial" upon
release of the opinion. Id. at 560 n.5.  A few months

later, the defendant's counsel filed a motion to
withdraw, noting that she had listened to the
recordings and "perceive[d] no reasonable grounds for
further proceedings in this Court."  According to the
defendant, his counsel did not provide him with copies
of the recording by the time she withdrew.  After
being provided audio recordings of the trial, the
defendant, again representing himself, filed a
supplemental motion for a new trial.  He argued that
this Court's re-transcription of the recording was
inaccurate, that this Court failed to follow the
proper procedure under Mass. R.A.P. 8(e) for
correcting the record on appeal, and that, by
correcting the record sua sponte after oral argument
and without consulting the parties, the Court had
denied him assistance of appellate counsel.  The
motion judge listened to the audio recording and
confirmed that this Court's transcription was correct.
He also rejected the defendant's procedural and
constitutional arguments.  Once a conviction has been
affirmed following plenary review, a defendant must
raise a "new and substantial" issue in order to appeal
the denial of a motion in the superior court. G. L. c.
278, § 33E.  To be "substantial" an issue must be "a
meritorious issue in the sense of being worthy of
consideration by an appellate court." Commonwealth v.
Gunter, 459 Mass. 480, 487 (2011).  An issue is not
"new" if "either it has already been addressed, or
where it could have been addressed had the defendant
properly raised it at trial or on direct review." Id.
None of the grounds raised by the defendant meet this
standard.  The Court, the defendant's appellate
counsel, and the motion judge all listened to the
recording and agree that the juror did not answer that
he would be biased by the photographs.  This Court's
sua sponte correction of the record was proper under
the version of Mass. R.A.P. 8(e) in effect at the time
of the defendant's appeal, which read: "If anything
material to either party is omitted from the record by
error accident or is misstated therein, . . . the
appellate court . . . on proper suggestion or its own
motion, may direct that the omission or misstatement
be corrected." Former Rule 8(e), Massachusetts Rules
of Court, Rules of Appellate Procedure, at 236
(Thompson Reuters 2017).[]] Finally, there is no merit
to defendant's argument that he was deprived of
assistance of appellate counsel. His lawyer received

[19]

> copies of the recording and could have filed a
> petition for a rehearing, but determined there was no
> grounds to challenge the Court's correction of the
> record.  Accordingly, it is therefore ordered that the
> defendant's application under the gatekeeper provision
> of G. L. c. 278, § 33E, for leave to appeal the denial
> of his supplemental motion for a new trial is denied."

June 15, 2022, Mem. Dec. & Order (Kafka, J.), Docket Entry #14,
Com. v. Lees, SJ-2021-0237 (footnotes omitted).  On July 12,
2022, Lees' motion for reconsideration of that decision was
denied.  See Docket Entry #14, Com. v. Lee, SJ-2021-0237; ECF
No. 33 252..

## III. PROCEDURAL HISTORY

On August 3, 2022, Lees filed the instant petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pet., ECF
No. 1.  On December 6, 2022, the Respondent filed an Answer and
Exhibits. Resp'dt's Answer Pet'r's Pet. Writ Habeas Corpus
("Ans."), ECF No. 15.  On December 15, 2022, Lees filed a
response to the Answer.  Pet'r.'s Reply, ECF No. 20.  On
February 8, 2023, Lees filed a Memorandum of Law in support of
the Petition.  Pet'r.'s Opening Mem. Support Pet. Habeas Corpus
("Pet. Mem."), ECF No. 23.  On May 16, 2023, Respondent filed a
Supplemental Answer with Exhibits ("Suppl. Ans."), ECF No. 33.
On May 24, 2023, Respondent filed a Reply Memorandum.  Pet'r.
Reply Mem. Opp. Pet. Habeas Corpus with Mem. Law ("Reply").  On
August 9, 2023, the Court Ordered the Respondent to provide a
copy of a portion of the voir dire in the underlying trial.

Elec. Order, ECF No. 39.  On August 14, 2023, the Respondent
complied with that Order.  Resp. Ct. Order, ECF No. 41.

Also pending before the Court is a motion to proceed in
forma pauperis, ECF No. 25, a motion to appoint counsel, ECF No.
24, and motion to compel, ECF No. 30.  Those motions are each
denied.

## IV.  ANALYSIS

Pursuant to 2254 Rule 8(a), an evidentiary hearing is not
warranted, and this petition is decided on the record before
this Court.  Lees' petition for habeas corpus is essentially a
two-pronged attack: (1)the underlying original transcript
controls and the revision by the SJS is incorrect; and (2) the
SJC's post-argument procedure of correcting the record without
permitting further argument violated Lees' procedural due
process rights.  Both arguments fail on the merits.

### A.   The Legal Standard

Pursuant to 28 U.S.C. § 2254(a), this Court may only
"entertain an application for a writ of habeas corpus in behalf
of a person in custody pursuant to the judgment of a State court
only on the ground that he is in custody in violation of the
Constitution of the Constitution or laws or treaties of the
United States."  28 U.S.C. §2254(c).

"To respect our system of dual sovereignty . . . the
availability of habeas relief is narrowly circumscribed."  Shinn

v. Ramirez, 142 S. Ct. 1718, 1730 (2022).  Indeed, it is not a

second appeal, and the Supreme Court has "recognized that

federal habeas review cannot serve as a substitute for ordinary

error correction through appeal . . .[Rather,] . . . [t]he writ

of habeas corpus is an extraordinary remedy that guards only

against extreme malfunctions in the state criminal justice

systems."  Id. at 1731 (citations and quotations omitted).

Congress has narrowed the path to habeas relief of state

convicted petitioners, and under the Antiterroism and Effective

Death Penalty Act of 1996 ("AEDPA"):

> [w]ith respect to 'any claim that was adjudicated
> on the merits in State court proceedings,' id. §
> 2254(d), AEDPA permits [the Court] to grant a habeas
> petition only if the state court's decision 'was
> contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by
> the Supreme Court of the United States,' Williams v.
> Taylor, 529 U.S. 362, 376 (2000) (opinion of Stevens,
> J.) (quoting 28 U.S.C. § 2254(d)(1)), or the decision
> 'was based on an unreasonable determination of the
> facts in light of the evidence presented in the State
> court proceeding,' 28 U.S.C. § 2254(d)(2).

Jackson v. Marshall, 864 F.3d 1, 9 (1st Cir. 2017).

First, however, a petitioner must satisfy the Court that he has

exhausted his remedies and not procedurally defaulted those

remedies in state court.  As the Supreme Court recently

explained the interplay between exhaustion and procedural

default:

> State prisoners . . . often fail to raise their
> federal claims in compliance with state procedures, or

even raise those claims in state court at all.  If a
state court would dismiss these claims for their
procedural failures, such claims are technically
exhausted because, in the habeas context, "state-court
remedies are ... 'exhausted' when they are no longer
available, regardless of the reason for their
unavailability." Woodford v. Ngo, 548 U.S. 81, 92-93,
(2006).  But to allow a state prisoner simply to
ignore state procedure on the way to federal court
would defeat the evident goal of the exhaustion rule.
. . . Thus, federal habeas courts must apply "an
important 'corollary' to the exhaustion requirement":
the doctrine of procedural default. Davila [v. Davis],
582 U.S. 521, at [527] . . . Under that doctrine,
federal courts generally decline to hear any federal
claim that was not presented to the state courts
"consistent with [the State's] own procedural rules."
Edwards v. Carpenter, 529 U.S. 446, 453, 120 S.Ct.
1587, 146 L.Ed.2d 518 (2000).

     Together, exhaustion and procedural default
promote federal-state comity.  Exhaustion affords
States "an initial opportunity to pass upon and
correct alleged violations of prisoners' federal
rights," Duckworth v. Serrano, 454 U.S. 1, 3, 102
S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam), and
procedural default protects against "the significant
harm to the States that results from the failure of
federal courts to respect" state procedural rules,
Coleman, 501 U.S. at 750, 111 S.Ct. 2546. Ultimately,
"it would be unseemly in our dual system of government
for a federal district court to upset a state court
conviction without [giving] an opportunity to the
state courts to correct a constitutional violation,"
Darr v. Burford, 339 U.S. 200, 204 (1950), and to do
so consistent with their own procedures, see Edwards,
529 U.S. at 452-453, 120 S.Ct. 1587.

     Despite the many benefits of exhaustion and
procedural default, and the substantial costs when
those doctrines are not enforced, we have held that a
federal court is not required to automatically deny
unexhausted or procedurally defaulted claims.  When a
claim is unexhausted, the prisoner might have an
opportunity to return to state court to adjudicate the
claim. See, e.g., Rose v. Lundy, 455 U.S. 509, 520
(1982).  When a claim is procedurally defaulted, a

[23]

federal court can forgive the default and adjudicate
the claim if the prisoner provides an adequate excuse.
Likewise, if the state-court record for that defaulted
claim is undeveloped, the prisoner must show that
factual development in federal court is appropriate.

"Out of respect for finality, comity, and the
orderly administration of justice," Dretke v. Haley,
541 U.S. 386, 388, 124 S.Ct. 1847, 158 L.Ed.2d 659
(2004), federal courts may excuse procedural default
only if a prisoner "can demonstrate cause for the
default and actual prejudice as a result of the
alleged violation of federal law," Coleman, 501 U.S.
at 750.  To establish cause, the prisoner must "show
that some objective factor external to the defense
impeded counsel's efforts to comply with the State's
procedural rule."  Murray v. Carrier, 477 U.S. 478,
488 (1986).  Then, to establish prejudice, the
prisoner must show not merely a substantial federal claim, such
that " 'the errors at ... trial created a possibility
of prejudice," but rather that the constitutional
violation "worked to his actual and substantial
disadvantage.'" Id., at 494, 106 S.Ct. 2639 (quoting
United States v. Frady, 456 U.S. 152, 170, 102 S.Ct.
1584, 71 L.Ed.2d 816 (1982)).

With respect to cause, "[a]ttorney ignorance or
inadvertence" cannot excuse procedural default.
Coleman, 501 U.S. at 753.  "[T]he attorney is the
petitioner's agent when acting, or failing to act, in
furtherance of the litigation, and the petitioner must
bear the risk of attorney error." Ibid. (internal
quotation marks omitted). That said, "if the
procedural default is the result of ineffective
assistance of counsel, the Sixth Amendment itself
requires that responsibility for the default be
imputed to the State." Murray, 477 U.S. at 488, 106
S.Ct. 2639.  That is not because a constitutional
error "is so bad that the lawyer ceases to be an
agent" of the prisoner, but rather because a violation
of the right to counsel "must be seen as an external
factor" to the prisoner's defense.  Coleman, 501 U.S.
at 754, 111 S.Ct. 2546 (internal quotation marks
omitted).  "It follows, then, that in proceedings for
which the Constitution does not guarantee the
assistance of counsel at all, attorney error cannot

provide cause to excuse a default." <u>Davila</u>, 582 U.S.,
at ----, 137 S.Ct, at 2065.

<u>Shinn</u>, 142 S. Ct. at 1732-33.

As for review of factual determinations of the record by
the courts of the Commmonwealth, as this Court has written:

> Under section 2254(d)(2), a state court's findings of
> basic or historical facts "are entitled to a
> presumption of correctness that can be rebutted only
> by clear and convincing evidence to the contrary."
> <u>Ouber</u> v. <u>Guarino</u>, 293 F.3d 19, 27 (1st Cir. 2002).
> "Inferences, characterizations of the facts, and mixed
> fact/law conclusions are more appropriately analyzed
> under the 'unreasonable application' prong of section
> 2254(d)(1)." <u>Id.</u>

<u>Woods</u> v. <u>Medeiros</u>, 465 F. Supp. 3d 1, 8 (D. Mass. 2020), aff'd,
993 F.3d 39 (1st Cir. 2021).

**B.   The Pending Motions are Denied**

### 1. Motion to Proceed In Forma Pauperis

Lees' Motion to Proceed in Forma Pauperis, ECF No. 25, is
<u>DENIED</u>.  Lees paid the $5.00 filing fee.  <u>See</u> Receipt, ECF No.
3. Even if he had not done so, a review of the motion and prison
account statement reveals that Lee has sufficient funds to pay
the modest $5.00 filing fee.

### 2. Motion to Appoint Counsel

Lees' Motion to Appoint Counsel, ECF No. 24, is <u>DENIED</u>.  .
Pursuant to 18 U.S.C. 3006A(2)(B) the Court may, upon a
determination that "the interests of justice so require" may
appoint counsel "for any financially eligible person who . . .
is seeking relief under section . . . 2254 . . . of title 28."

Id.  "The decision to appoint counsel is discretionary; a habeas petitioner has no constitutional or statutory right to appointed counsel." Cavitt v. Saba, CIV.A. 12-11700-WGY, 2012 WL 4094358, at *1 (D. Mass. Sept. 14, 2012) (citing Jackson v. Coalter, 337 F.3d 74, 77 n.2 (1st Cir. 2003)).  "The U.S. Court of Appeals for the First Circuit has set forth three criteria by which a court must discern the 'rare' case where appointment of counsel for a habeas petitioner is warranted: (1) the likelihood of success on the constitutional claim; (2) the factual complexity and legal intricacy of the claim; and (3) the ability of the prisoner to investigate and develop the factual record necessary to the claim.  St.-Vil v. Alves, CV 22-10574-JCB, 2022 WL 3109518, at *2 (D. Mass. July 28, 2022) (citing United States v. Mala, 7 F.3d 1058, 1063-64 (1st Cir. 1993)).  Even presuming without finding that Lees is otherwise financially eligible, Lees has made no attempt at demonstrating the factors balance in his favor.  In any event, the balance of the factors weighs in favor of denial of the motion inasmuch as there is no likelihood of success on the constitutional claim.

### 3. Motion to Compel

The Motion to Compel, ECF No. 30 is DENIED.  The Court agrees with the Respondent that Lees' request for the trial court exhibits in paragraph 7 of the motion are irrelevant to this Court's determination of the issues presented in this

petition.  The Respondent offered to produce a status report as to whether the requested exhibits still exist and are available. The Respondent is requested, but not ordered to provide that status report only to the Respondent, as the Court does not need the trial exhibits to resolve the matters before it.  As to the remaining issues, the Court has sufficient record materials to decide the narrow issues before it as presented in the petition.

   **C.  Ground One Fails -- the Corrected Transcript is Accurate and there is No Evidence of Juror Bias or Impartiality.**

   In Ground One, Lees challenges the substance of the correction to the record.  "The Sixth Amendment guarantees a defendant charged in a criminal case the right to 'trial[ ] by an impartial jury.' U.S. Const. amend. VI.  This 'right is made binding upon the states through the fourteenth amendment' and, thus, applies with full force to state criminal prosecutions." Bebo v. Medeiros, 906 F.3d 129, 135 (1st Cir. 2018).  Lees claims that the seating of Juror No. 226 violated his Sixth Amendment right to a trial by an impartial jury.  The claim fails.

   First, Lees' claim that Juror No. 226 was biased based upon the uncorrected record fails, because the SJC corrected the record, as was its prerogative, and on that corrected record there is no evidence that SJC's correction was erroneous.  While there is no absolute constitutional right to an accurate record,

there is certainly no constitutional right to an inaccurate transcript.  See Allard v. Olivarez, C97-1988 FMS (PR), 1997 WL 305272, at *1 (N.D. Cal. June 2, 1997) ("There is no constitutional right to a totally accurate transcript of a state criminal trial.  Tedford v. Hepting, 990 F.2d 745, 747 (3d Cir.), cert. denied, 510 U.S. 920 (1993).  A constitutional violation may result only if the inaccuracies in the transcript are such that they adversely affected appellate review in the state courts. Id.").  The objective correction of a transcript does not prejudice Lees with respect to his constitutional rights to a fair trial.  That correction is a determination of fact that can only be rebutted by clear and convincing evidence. The only evidence that might (but does not) rebut this presumption is the audio clip of the hearing.[9]

---

[9] This Court's review of the audiotape is the better course of action, where the objective record would be the only clear and convincing evidence that Lees would be required to submit to overturn the factual determination by the SJC.  See Townes v. Alabama, 139 S. Ct. 18, 20 (2018) (Statement of Justice Sotomayor respecting the denial of certiorari) ("This Court called for the record and specifically requested that the trial court provide a copy of the audio recording.  The trial court informed this Court's Clerk's Office that the recording no longer exists.  Without the recording, we cannot know what the judge actually said at trial . . . . The Constitution guarantees certain procedural protections when the government seeks to prove that a person should pay irreparably for a crime.  A reliable, credible record is essential to ensure that a reviewing court—not to mention the defendant and the public at large—can say with confidence whether those fundamental rights have been respected.  ").  Notably, the Supreme Court denied certiorari to the affirmance of a death penalty on the grounds

Lees' tortured interpretation of the corrected record is meritless.  In fact, the opposite conclusion is compelled: Juror No. 226 expressed no evidence of bias at all after a general and individual voir dire.  Specifically, the corrected question can only be interpreted as a binary answer: either Juror No. 226 could see the photographs "and remain a fair and impartial juror" or not.  Here, the affirmative answer confirms that Juror No. 226 did not have a concern; neither did the Court, nor the parties.  Lees' misunderstanding and later attempt to strike may have been the result of the Court phrasing this question differently across different jurors, but Lees' later misunderstanding is irrelevant.  Indeed, Lees' later apparent confusion does not change the Court's and parties' original understanding that Juror No. 226 expressed no responses to the general and individual voir dire questions disposing of the question of Juror No. 226's bias or partiality.

Accordingly, as for Ground One, Lees has failed to demonstrate that the SJC's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, or based on an unreasonable determination of the facts in light

---

that in the absence of audio tape, the factual determination of the state appellate court controlled.

of the evidence presented in the criminal proceedings.  See 28

U.S.C. 2254(d).[10]

### D.   Grounds Two and Three Fail - the SJC's Procedures During Plenary Direct Appeal did not violate Lees's Constitutional Procedural Due Process Rights

Lees' remaining challenges essentially claim that the

Supreme Judicial Court denied Lees procedural due process under

the Fourteenth Amendment by (1) post-argument sua sponte

correction of the record without further argument; and (2)

purportedly not permitting Lees assistance of counsel after his

primary ground evaporated due to the correction.  These claims

also fail.

Presuming without determining the claims were exhausted and

not procedurally defaulted, these claims are nonetheless

---

[10] To the extent that Lees is left with the argument that he was not permitted to exercise a peremptory challenge over Juror No. 226, that argument fails as matter of federal law.  The Supreme Court holds that "the right to exercise peremptory challenges in state court is determined by state law.  This Court has long recognized that peremptory challenges are not of federal constitutional dimension." Rivera v. Illinois, 556 U.S. 148, 152 (2009).  "If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern. Rather, it is a matter for the State to address under its own laws." Id. at 157.  "Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." Id. at 158.  Lees has not provided evidence of a mistake as to the purported denial of his tardy request for peremptory strike of Juror No. 226.  There is therefore no constitutional issue as to the denial of Lees' purported peremptory strike request.

meritless.  The SJC was being pragmatic: correcting a record by undisputable evidence destroyed the factual basis for an appeal. The SJC was entirely transparent as to what it did, at least with respect to obtaining the audiotapes: notifying the parties in March 2018 that it had obtained the audiotape.  SJC Docket #54.  Two months later, Lees' counsel filed a motion to obtain those recordings, SJC Docket, Doc. No. 55, which was referred to a Single Justice for disposition, SJC Docket No. 56.  On May 15, 2018, while that motion was pending, the SJC issued its decision, noting in a footnote that the recordings would be provided to counsel.[11]  There is no evidence that the correction

_____

[11] To the extent that Lees argues that his counsel was ineffective, that claim is not before the Court and, in any event, is also meritless.  Any failure to obtain the transcripts earlier is harmless error, inasmuch as the transcripts were obtained by counsel, and there was no further argument to make with respect to Juror No. 226.  See U.S. v. Lemmon, 216CR20008PKHMEF1, 2022 WL 2525339, at *14 (W.D. Ark. May 11, 2022), report and recommendation adopted, 2:16-CR-20008-001, 2022 WL 2496205 (W.D. Ark. July 6, 2022), motion for relief from judgment denied, 2:16-CR-20008-001, 2023 WL 5112005 (W.D. Ark. Aug. 9, 2023) ("At the [28 U.S.C. § 2255] evidentiary hearing, however, [the Peititoner] conceded that he does not have a right to the court reporter's backup audio recording of the trial, and that [counsel] did all she could have done to find the alleged error when she listened to the portion of the trial audio Lemmon directed her to and compared it to the official trial transcript, finding no discrepancy and no inappropriate statements by the Court . . . Thus, [Petitioner's] representation cannot be deficient based on the failure to bring this frivolous claim.").  Lees has not established "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

by the SJC was erroneous, and Lees' counsel discerned no further basis for appeal at that point.  The rescript had already issued by that point.  Lees' desire to unwind his meritless appeal and seek a do-over for a new (and speculative) potential basis to appeal is unavailing and simply not a denial of assistance counsel.  As for Lees' claims of actual innocence, his conclusory and unsubstantiated claim is insufficiently supported.

Lees was not denied due process; in fact, he availed himself of all process that was due.  While the SJC might in its discretion have provided a further opportunity for Lees' counsel to provide supplemental briefing and argument -- a point on which this Court takes no position -- it was not constitutionally required to do so, and by denying Lee's improper pro se petition for rehearing when represented by counsel, presumably determined that it need not do so here where the corrected record revealed no issue concerning the Juror No. 226's bias or impartiality.

V.   **CONCLUSION**

Lees had a fair criminal trial -- a trial at which he insisted on representing himself.  He was convicted of murder in the first degree of this own father by an impartial jury based upon overwhelming evidence.  On direct appeal - plenary review under Section 33E -- the SJC conducted its statutorily required

duty to thoroughly review the conviction, and after careful review, and appropriate correction of the record, concluded that Lees received a fair trial and affirmed the conviction.  The corrected version of the transcript, having not been contradicted by any -- let alone clear and convincing -- evidence, eliminated the factual basis for the appeal. Lees' counsel on direct appeal agreed that the correction was accurate.  The Section 33E review being completed, and the juror impartiality issue resolved, there was nothing left to litigate: Lees' conviction was -- and is -- final.  Lee was not denied the right to counsel: he had able appellate counsel.  Lee's dissatisfaction with the results of his appeal was not a violation of his Due Process rights.

As set forth above, after this Court's careful review of the parties' filings, relief must be denied because Lees has not met his high burden of proving that the state court decisions as to all Grounds in the petition were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Accordingly, the Petition (ECF No. 1) is DENIED and the action is DISMISSED.

Pursuant to 28 U.S.C. § 2253(c)(2) and Rule 11(a) of Rule Governing Section 2254 Cases in the United States District courts, a certificate of appealability is hereby <u>DENIED</u> because Lees has not made a substantial showing of the denial of a constitutional right.

The Clerk shall transmit a copy of this order to the Petitioner and enter a separate order of dismissal of this action.

**SO ORDERED.**

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[12]

---

[12] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.